IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

LEAH D. SALSMAN                                                                                         PLAINTIFF

V.                          Civil No. 2:21-cv-02201-PKH-MEF

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration                                                                   DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Leah Salsman, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying her claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background**

Plaintiff filed her applications for DIB and SSI on January 8, 2020, alleging disability since September 18, 2017, due to anxiety disorder, panic disorder, depressive disorder, and post-traumatic stress disorder ("PTSD").  (ECF No. 10, pp. 73, 83, 198-208, 221, 239-240, 269-270). A telephonic administrative hearing was held on February 11, 2021.  (*Id*. at 31-58).  Plaintiff was present and represented by counsel.

Born in 1989, the Plaintiff was 28 years old on her alleged onset date and possessed the equivalent of a high school education. (ECF No. 10, pp. 24, 36, 325). She has past relevant work ("PRW") experience as a waitress and hotel desk clerk. (*Id*. at 24, 223, 228-234 271-282).

On March 10, 2021, the Administrative Law Judge ("ALJ"), identified Plaintiff's depression, anxiety, and PTSD as severe impairments. (ECF No. 10, p. 19). He concluded she did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that she retained the RFC to perform a full range of work at all exertional levels with the following limitations: jobs involving simple tasks and instructions that are learned by rote with few variables and little judgment; interpersonal contact that is only incidental to the work performed; and simple, direct, and concrete supervision. (*Id*. at 21). With the assistance of a vocational expert ("VE"), the ALJ then determined she could perform work as a wall cleaner, floor waxer, and kitchen helper. (*Id*. at 25).

The Appeals Council denied Plaintiff's request for review on October 18, 2021. (ECF No. 10, pp. 5-10). Plaintiff subsequently filed this action on December 8, 2021. (ECF No. 2). Both parties have filed appeal briefs (ECF Nos. 13, 14), and the matter is ready for Report and Recommendation.

## II.     Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v.*

*Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder will only consider Plaintiff's age, education, and work experience in the light of her

residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.     Discussion

Plaintiff raises several issues on appeal, including the ALJ's alleged failure to develop the record, improper analysis of her mental impairments and subjective complaints, and deficient RFC determination. After carefully reviewing the record, we find substantial evidence to support the ALJ's decision.

#### A.     Development of the Record

Plaintiff insists that the ALJ failed to fully develop the record by requesting records from her counselors at The Guidance Center. The ALJ does have a duty to develop the record fully and fairly, but only to the extent that it contains sufficient facts upon which he can base an informed decision. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). Therefore, he is required to recontact a treating or consulting physician only if a critical issue is undeveloped or underdeveloped, and to order medical examinations and tests when the medical records presented to him fail to provide sufficient medical evidence to determine whether the claimant is disabled. *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010) (quotation, alteration, and citation omitted).

In the present case, Plaintiff's counsel did advise the ALJ that she needed his assistance in obtaining all of Plaintiff's medical records from The Guidance Center. (ECF No. 10, pp. 46, 52). The Guidance Center provided records documenting Plaintiff's initial assessment and medication management appointments but, for unknown reasons, did not provide her counseling records. (*Id*.).

Plaintiff testified that she had seen several counselors since beginning her formal mental health treatment, attending therapy appointments approximately twice per month. (*Id*. at 47).

Although these records are not presently before this Court, the record does contain a January 2020 letter penned by Plaintiff's then treating counselor, Brian Prieto, indicating that he had been treating the Plaintiff since November 12, 2019, for PTSD and major depressive disorder. (*Id*. at 382). Counselor Prieto identified occupational and social impairments, to include difficulty coping with pressures/stressors and interacting with the public, that would impair her ability to communicate effectively and handle ordinary events. He also opined that it was "difficult to predict her return to work at this time."

The ALJ ultimately found Counselor Prieto's opinion to be persuasive and supported by the overall record. Medication management notes from Advanced Registered Nurse Practitioner, Alice Welch, at The Guidance Center reveal a primarily depressed and/or irritable mood with a congruent affect for which the medications prescribed were moderately effective. (ECF No. 10, pp. 338-354, 363-378, 394-421). Plaintiff was compliant with treatment, reported no side effects that would interfere with her ability to perform work-related tasks, and required minimal medication changes.

Contrary to Plaintiff's contention, Nurse Welch did not consistently note evidence of psychosis. In fact, she documented auditory hallucinations and odd delusions on only one occasion each. (*Id*. at 363-370, 398-405). All other exams specifically noted no evidence of hallucinations, delusions, homicidality, and/or suicidality. Further, she exhibited normal speech, eye contact, motor activity, attention, behavior, and thought processes.

In February and April 2020, agency physicians reviewed the evidence of record and found the Plaintiff to have moderate limitations in the following areas: carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent

5

pace without an unreasonable number and length of rest periods; and interacting appropriately with the general public.  (ECF No. 10, pp. 66-67, 68-70, 88-90, 91-92).  They ultimately concluded she could perform work where the interpersonal contact is incidental to the work performed; the tasks are simple, routine, and repetitive; the complexity of the tasks performed is learned and performed by rote with few variables and little judgement; and the supervision required is simple, direct, and concrete.

While it would have been preferable for the ALJ to at least attempt to obtain Plaintiff's counseling records, we cannot say that the absence of these records prejudiced the Plaintiff's case. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (prejudice only shown where evidence ALJ failed to obtain would have made difference in case).  It does appear that Counselor Prieto treated Plaintiff for much of the relevant period.  His ultimate conclusions are in the record and credited in the RFC.  Plaintiff even admits that the purpose of his letter was to substitute for his actual records.  As such, we cannot say that the mere addition of the counseling notes to the record would change the outcome in this case.

Plaintiff also maintains that the ALJ's failure to order a consultative mental exam ("CME") requires remand.  And, although the ALJ did indicate that a CME would be helpful, this does not mean that such an exam was required.  As laid out above, the record contains sufficient evidence upon which the ALJ could conclude the Plaintiff was not disabled.

### B.     PRT Analysis

Plaintiff also maintains that the ALJ erred in his psychiatric review technique ("PRT") analysis because he failed to explain the discrepancy between the agency physicians' conclusion that the Plaintiff had only moderate limitations in her ability to interact with others and his determination that she had marked limitations in this area of functioning.  When evaluating mental

impairments, the ALJ is required to conduct an additional "special technique," known as the PRT. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The PRT requires the ALJ to rate the Plaintiff's degree of functioning in the following areas of functioning: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). This technique is mandatory at all stages of the administrative process and must be documented in the ALJ's decision. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4) ("[W]hen we evaluate the severity of mental impairments . . . we must follow a special technique at each level in the administrative review process."); *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007). Further, the ALJ must include specific findings as to the degree of limitation in each of the functional areas and an explanation of the evidence considered in reaching those findings. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). The ALJ is not, however, required to accept the PRT findings of the agency physicians. He is entitled to view all the evidence and determine whether their opinions are supported by the overall record. *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008).

Here, the ALJ concluded that the record supported a finding of marked limitations in Plaintiff's ability to interact with others, rather than the moderate findings reached by the agency physicians. And, contrary to Plaintiff's argument, the ALJ did identify the bases for this determination. (ECF No. 10, p. 20). In large part, he credited Counselor Prieto's conclusion that she experienced limitations communicating effectively with people and handling ordinary events. Further, although the Plaintiff reportedly spent time with her aunt, attended church with her father on a weekly basis, and got along "wonderfully" with authority figures, the ALJ noted that Plaintiff also alleged difficulty getting along with family, friends, and neighbors, and indicated she had been fired from a job due to problems getting along with others. Additional support is garnered

from Plaintiff's testimony that she could work around others, it was just the interaction that was the problem. (*Id*. at 45). Therefore, we find substantial evidence in the record to support the ALJ's PRT analysis.

### C. Subjective Complaints

Next, the Plaintiff asserts that the ALJ failed to articulate valid reasons for rejecting her subjective complaints. The ALJ is required to consider all the evidence relating to Plaintiff's subject complaints, including: (1) her daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitation and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) the resulting functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). In so doing, the ALJ must also consider the claimant's prior work record, observations made by third parties, and the opinions of treating and examining physicians. *Id*. An ALJ may not discount the Plaintiff's subjective complaints solely because the medical evidence fails to support them. *Id*. However, "[a]n ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016) (quoting *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006)).

In the present case, the ALJ properly noted that the medical evidence consistently revealed largely normal mental status examination findings. (ECF No. 10, p. 22). On multiple occasions, Nurse Welch documented normal attention, thought processes, and speech, cooperative behavior, and good judgment and insight. (*Id*. at pp. 338-354, 363-378, 394-421). *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (absence of supporting medical evidence is a consideration).

As the evidence shows, the ALJ also recognized that the Plaintiff's impairments improved with treatment. In March 2020, Nurse Welch prescribed Sertraline, at which time the Plaintiff's

8

mood was noted to be "fine." (ECF No. 10, pp. 347-350, 414-417). During visits in May and June, her mood was pretty good and/or decent. (*Id*. at 371-378, 406-413). And by September, her mood was "okay." Nurse Welch noted her medications to be moderately effective and Plaintiff agreed with her medication regimen, at times even voicing a desire for no changes. (*Id*. at 371-374, 406-409). Impairments that are controllable or amenable to treatment do not support a finding of disability. *See Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010).

Additionally, despite a contention that her medications caused adverse side effects, the only side effect reported to her health care providers was an increased appetite. (ECF No. 10, pp. 399-397). And this report was immediately met with the addition of Topiramate to her medication regimen. The record contains no evidence of any medication side effects that would affect the Plaintiff's ability to perform work-related tasks. *See Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (alleged side effects were properly discounted when plaintiff did not complain to doctors).

Plaintiff's daily activity also call into question the severity of her mental impairments. By her own admissions, she can care for her pet, prepare meals, do some cleaning, drive, shop for groceries, go thrift store shopping, go out alone, and attend church. (ECF No. 10, pp. 241-248). She admitted to regular contact with family, despite difficulty getting along with others, and indicated that she got along well with authority figures. Plaintiff's father also completed a function report that was consistent with the Plaintiff's reports. (*Id*. at pp. 259-268). Moreover, Plaintiff's own testimony revealed she could work with and around others. Her problem occurred when she had to interact with them. This indicates that the Plaintiff can work with some interpersonal restrictions.

Although not specifically noted by the ALJ, the undersigned also points out that the Plaintiff's mental impairments did not require inpatient treatment. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (holding conservative treatment is inconsistent with disability). In fact, Nurse Welch consistently indicated that her symptoms did not meet the criteria for admission. (ECF No. 10, pp. 338-354, 363-378, 394-421). Therefore, outpatient treatment was her only option.

It is for these reasons that we find that the ALJ properly considered Plaintiff's subjective complaints but concluded they were inconsistent with the overall record.

### D. RFC Determination

Lastly, Plaintiff contends that the ALJ failed to expand upon his PRT findings in assessing her RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. §§ 404.1545, 416.945. While a claimant's RFC must be based on some medical evidence of the claimant's ability to function in the workplace, there is no requirement that an RFC finding be supported by a specific medical opinion. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007); *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013). It is "ultimately an administrative determination reserved to the Commissioner." *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (quoting *Cox*, 495 F.3d at 619-20). However, the ALJ adjudicates a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009). When the record contains conflicting evidence from treating and examining physicians, it is the ALJ's function to resolve those conflicts. *Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart*, 421 F.3d 745, 749–50 (8th Cir. 2005) (internal marks omitted)).

Although the Plaintiff seems to argue that the ALJ's RFC differs significantly from that assessed by the state agency physicians, we do not agree. The ALJ limited the Plaintiff to jobs involving simple tasks and simple instructions where the tasks are learned by rote with few variables and little judgement; the interpersonal contact is incidental to the work performed; and the supervision required is simple, direct, and concrete. We do not find this to be less restrictive than the agency physicians' limitation to tasks that are simple, routine, and repetitive with the complexity of said tasks learned and performed by rote with few variables and little judgement and where the supervision required is simple, direct, and concrete. However, the RFC determination lies solely with the ALJ. *Perks*, 687 F.3d at 1092. And, in the present case, we find substantial evidence to support his determination.

As for Plaintiff's contention that portions of Counselor Prieto's opinion conflicted with the assessments from the agency physicians, we note that the resolution of conflicts among opining sources is well within the ALJ's domain. *Tindell*, 444 F.3d at 1005. While it is true that Counselor Prieto voiced uncertainty as to Plaintiff's return to work, the ALJ was not required to adopt this conclusion. And the mere fact that he found the counselor's opinion to be persuasive does not mean that he must incorporate it verbatim. Simply put, the assertion that the Plaintiff was not able to return to work at the time of Counselor Prieto's January 2020 letter is not supported by the overall record. Therefore, we find no error.

Additionally, citing to no authority, Plaintiff maintains that the ALJ's RFC does not account for his assessment of marked limitations in social interaction. But, by her own testimony, Plaintiff admitted that she could at least work with and/or around others. She also reported no difficulty getting along with authority figures. As such, we find that the ALJ's limitation to work where the interpersonal contact is only incidental to the work performed and the supervision is

simple, direct, and concrete adequately accounts for the Plaintiff's limitations in this area of functioning. *See Cronin v. Saul*, 945 F.3d 1062, 1068-1069 (8th Cir. 2019) (marked limitations in the ability to interact with others adequately accounted for in RFC limiting individual to incidental interpersonal contact). This limitation covers all types of interpersonal contact, whether it be with the public, co-workers, or supervisors. It also accounts for Counselor Prieto's finding that the Plaintiff was limited in her ability to communicate effectively and handle ordinary events.

Despite Plaintiff's contention that vocational expert testimony supported her claim of disability, said testimony was given in response to counsel's interpretation of Counselor Prieto's opinion. In the hypothetical, counsel asked the VE to assume the individual could not appropriately interact with supervisors, coworkers, and the public at all. (ECF No. 10, pp. 56-57). However, Counselor Prieto's opinion stated that the Plaintiff would have difficulty interacting with others. He never said she could have no interaction. And progress notes from Nurse Welch fail to document a total inability to interact. Plaintiff was able to communicate her problems and response to medication while maintaining appropriate eye contact and exhibiting no abnormal behaviors. Therefore, we conclude that the ALJ's RFC determination is supported by substantial evidence.

## IV.   Conclusion

For the reasons and upon the authorities discussed above, it is recommended that the Commissioner's decision to deny benefits be affirmed, and that the Plaintiff's Complaint be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties**

**that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of August 2022.

/s/ Mark E. Ford
HON. MARK E. FORD
CHIEF UNITED STATES MAGISTRATE JUDGE